elsa bear    urban 바람 fish poke, ice cream marshmallow pocket polar bear 얼음봉투 Good morning. My name is Bob Lukes, Garlington Lawn Robinson. I'm here on behalf of Polar Bear Productions. We have a trademark and copyright case whose entire focus now really is on the pleading requirements under Rule 8 of the Federal Rules of Civil Procedure. There once was a time when many cases were decided on pleadings alone. And a party who had a complaint that was artfully drafted survived and moved forward on the merits, whereas one was not so artfully drafted was dismissed. It was the days of demurers when few cases were decided on their merits. And thankfully, things have changed. There was a public outcry against this injustice, and that's ended. In 1933, an entirely new system was adopted. Well, Counsel, let's get right to the issue here, and that's with respect to the motion to strike the common law claim. Yes, Your Honor. The judge granted the motion. You obviously disagree. Show me where the common law claim was made prior to Pretrial Order No. 3. Your Honor, I think what Tynix is claiming here is that we did not use the word common law in any of our pleadings prior to that time, and that's acknowledged as true. I think the response to that is, under these broad rules of pleadings, it's the exact type of thing that should be outmoded in the days of the long gone, where a failure to use a specific word is going to control the merits of a case. What was pled from the very first day in this complaint, in the amended complaint, and in the first pretrial order was a claim for trademark infringement. Based on the Montana statute. Your Honor, I think the ---- Specify. In one point in the complaint, it refers to Montana statute. In the prayer for relief, there's no request, there's no reference to statutory law at all. In the heading for the count itself, it says count to trademark infringement 1125, 15 U.S.C. 1125, and Montana law. And that's essentially repeated in the prayer for relief. We're proceeding under federal law and under state law. Now, we have a local practice, and I believe by rule, where if you're ---- if you are proceeding under a statute, you refer to the statute. And we did so. It was in a single place in the amended ---- in the original complaint where we referred to MCA 30-13-301XX, I believe it is. But the point of providing notice under Rule 8 is laying out what is the substance of a trademark claim. The original complaint, the amended complaint, the first pretrial order all referred to the trademark that was held by Polar Bear Productions, the prior contractual relationship, the contract ended, and then Timex continuing to use the trademark thereafter. That is the substance in creating a likelihood of confusion and sponsorship. That is the substance of any single trademark claim, and certainly one under common law. And so I think what Timex's point is, is that, well, you went farther than that, and you referred in part to a statute. Therefore, that's all you have is a statutory cause of action. And again, I think that is a very technical reading of the pleadings, that there is the basic substance of that trademark claim was provided, and again, in the prayer for relief and elsewhere, no specificity is given with regard to the statute. At the time of the discussion of the statute of limitations before the first trial, when the trademark claims were dismissed, what was the district court's understanding then of whether there was a common law claim? You know, the issue had never even been raised at that point. I think it was a very simple one at the time. Well, it was actually discussed, and the district court seems to have thought that maybe there was one. Well, and I think what the district court has done has read the prior opinion of this court, and in one place, it does refer to a statutory cause of action. But in other places, it refers simply to our state trademark claim. And I think what the court has — the district court has done was kind of improperly rely on this prior court's decision, where it was never, ever raised that, oh, there wasn't this common law claim, or there was a common law claim. It was a simple motion for summary judgment based on the statute of limitations. The entire discussion before the district court and before this Court previously is what statute of limitations applies in Montana to a trademark action. There was never a distinguishing point to a statutory cause or a common law cause of action. It dealt with it in toto as both. And so I think any reliance by the district court on the prior court — this court's decision was placed because that issue was never raised before. It was only raised after the appeal, where Tymex said, aha, now that we're back here, by the way, there is no common law claim because it's never been pled. That was first raised in this lawsuit, I believe, in 2004, after it had been going on for four years, when we were proceeding towards a third trial. I think Rule 8 has been satisfied. And Tymex had at its arsenal the ability to inquire. It's put on notice of a trademark infringement claim, a simple — The original complaints are at least ambiguous. Would you agree with that? So where does that leave you? Well, I think if something is ambiguous, if something is improper — is pled inartfully, which is what we're talking about, then there are means in the process of discovery where you learn. If you are defending a claim, you may look at that ambiguity or that inartful character and say, here's a request for admission. Are you proceeding under common law, or an interrogatory, or a request for a more definite statement? Those are the ways to address those issues, and not, frankly, to wait until we try the case twice and the case has been at issue for four years and then say, oh, by the way, this wasn't artfully pled. Tymex also argues that the first pretrial order, that even if it was pled, the first pretrial order somehow removes this common law claim. And, again, we would disagree with that. There is a reference to the statutory cause of action, but in numerous other places in the pretrial order, it simply talks about the substance of our trademark infringement claim and that we're proceeding under Montana State and Federal law, and that nothing therein should further restrict our rights than were originally set forth in the original complaint. The district court made its — Sotomayor, is there any difference to your argument that the statute itself recognizes and preserves common law rights, and that by referring to the statute, at least arguably, you're referring to any incorporated common law rights? Your Honor, I think that's an ancillary argument. The fact that within the Montana statutes itself is an acknowledgment of common law. I think that's certainly important for what Tymex has given notice of. When you're referring to these statutes, 3013, 301 at sec, does that include this reference to common law? Again, some possible notice that they would have that the substance of our claim might include, does include, a common law claim. What sense does it make? I mean, your ultimate position on the merits has to depend on the fact that despite the codification which required registration, which is why we've lost on the trademark claim, State claim, trademark claim, Act claim, there's still a common law cause of action that doesn't include registration. Well, what was the point of having the statute then? What was the point of — In other words, your position now on the merits is that you can go forward with a common law claim without having registered, even though under the State statute you have to have registered. How could the — what sense would it have made to continue on the common law non-registration rule and then to codify an act that does require registration? Everybody would then, who hasn't registered, would just go to the common law claim, and the registration requirement would be meaningless. I'm afraid I'm not understanding the question. Is it whether — is what is the — How can they coexist? I mean, ultimately — Can they coexist? Common law claim? Oh, absolutely. And, I mean, I think that is the best place to acknowledge and recognize trademarks in a given State. You send something to the Secretary of State, it's approved, reviewed, stamped, and sent back. And there are certain additional remedies that you get if you do that. You put other parties on notice, and you get enhanced damages under the law. I see. So the difference is that you get something if you register that you don't get if you don't register. That's true. That's true. And I think, too, the backtrack to that is we pled under the alternative. That is under either one. And even though that registration was not in place at the time that the infringement took place, we believed and argued to the district court that it was still relevant, that we should be able to show the jury and argue to the jury that it was ultimately approved by the Montana Secretary of State, that it had met their requirements, and that, to some degree, that provided it with a legitimate stamp of authority in the State of Montana. The district judge rejected that argument and said, no, the statutory claim is gone. But what we should be left with is our common-law claim to proceed onward and to show through licensee estoppel that Timex as a prior licensee of the mark is now liable for infringement, having used it afterwards, after the contract expired. Roberts. Counsel, did you make a motion to amend the complaint to add the common-law claims? We did not, Your Honor, simply because it was never perceived as required. Again, this was not raised until nearly four years after the case had started. And as we were proceeding to the third trial, we were ordered by the district court to prepare a new pretrial order. We did so. We included in there with now, as the case, as you may understand, the copyright component of the case had been discharged previously. We were proceeding forward merely on the trademark claim, so we placed a lot more emphasis and detail on the trademark claim in that pretrial order. And that is when Timex had objected and filed. I guess the motions were filed prior to that time, but, again, only as we were moving towards that third trial. And, again, at that point, we felt that the claim had been at issue for years. There was no ruling on a 16e issue, motion on Rule 16e? Because there was no motion to amend. All right. Finally, I would say that the district court determination was made not by looking at evidence or listening to witnesses, but by looking at the pleadings. And this Court is in just a good position to do that, as the underlying district court is, so the appropriate standard of review should be a de novo review. We respectfully submit that the district court erred. We would like to reserve any time that we have remaining. Roberts. They do so, counsel.  We'll hear from Timex. Counsel, you may proceed. Good morning, Your Honors. May it please the Court, my name is John Margiatta. I'm with the firm of Frost, Zelnick, Lehrman & Zissou New York, and along with co-counsel Ron Bender from Missoula, Montana. We represent Timex, the defendant appellee in this matter. I want to make three points today in my argument. The first is that this is not a case where the district court dismissed a claim based on outmoded pleadings or any kind of technical issue raised by Timex four and a half years into the case. That's simply not what happened, and that's going to be the first point of my argument. I just want to outline the other two before I proceed. The second is that the proper standard of review here is an abusive discretion standard. And the third is that the record here shows not only that Polar Bear never pleaded a claim for common law trademark infringement or for trade dress infringement, and that's something that didn't come up in the initial argument, and I'll get to, but that it never intended to. And I think that there's a big difference there. This is not a gotcha by Timex. This is a court looking back on four and a half years of litigation, numerous pretrial motions, motions to exclude two trials, and an appeal, and a rather ---- Kagan. But the trials had nothing to do with the trademark claim, so they're not terribly informative. What's informative is the proceedings before the first trial at which the trademark claims were dismissed, and the question as well was dismissed. And I look back at that transcript, and I'd like to read some of it, and I'd like to comment, because it seems to me at that point the district court did think there was a possible common law claim in there. I don't know whether you've looked back at it. I'm sorry? I'm sorry. The transcript on the argument on the dismissal, the original dismissal of the trademark claims on the two-year statute of limitations.  I have looked back at that transcript. Well, the district court says that there was the argument was that because one of the arguments was that because the statute intended to preserve common law claims, you therefore looked to the common law three-year statute instead of a three-year limitations period instead of the statutory two-year limitations period. But the court went on to say that the court should be able to, in determining the amount of time available to a party, to bring a claim found in common law or a claim found in the Montana statute. And then he goes on and says, I'm going to borrow the Montana statute of limitations for fraud and apply it to the Montana trademark infringement claim or any common law claim for trademark infringement, because it appears to the Court that that's the most applicable and consistent statute to apply for a claim that is similar in substance to the Lanham Act. And then he says, so the defendant's motion as to Montana trademark infringement claims by statute or common law is granted to dismiss those claims. And then he goes on later and says, and any that he's dismissing, let's see, an independent or any Montana trademark infringement claim arriving by statute or common law. So he says three different times, maybe four, that what he's dismissing includes a common law claim. May I ask where you're reading from? I'm reading from page 28, page 8 of the transcript on the hearing on the statute of limitations issue. I'm not sure of the date, unfortunately. Is there a supplemental excerpt of records? I suppose so. I'm not positive. Maybe you'd like to comment on it later, but I'm --- Well, I mean, I can address it in any event, because the claims were dismissed at that point. That did not come up at the hearing after the -- when we went down on the third pretrial for the possible trial, third trial. This issue did not arise. And from that point forward, whatever had been dismissed, that certainly never got appealed to this Court, any common law claim. And the bigger --- well, there are several points that I want to make. It's -- if you look, if we start with the third pretrial order, which is the supplemental excerpt of record 9, and you look at page 190, and you compare what's there, there's a subsection B, trademark infringement under common law, and it goes on for three paragraphs. And in there, it discusses an entire entirely new mark, a supposed Paddle Quest cover photo, and that is the sleeve that was used on the --- on the sleeve, the sleeve that was used to cover the VHS cassette that was sold of it. If you look at this pretrial order, this proposed pretrial order, and compare it to the first two, there's no question that it represented a substantial expansion of the claims. I think that Polar Bail will concede that you can't find this language anywhere else. And what the real issue is, what occurred below. And Polar Bair is arguing that Timex raised all of a sudden this argument at the eleventh hour, that this had never been pleaded before, and that if it was inartfully pleaded, that should be excused. But the fact of the matter was, when the Court remanded whatever was left of the trademark claims, and I think that the language in Polar Bair 1 from this Court is definitive in stating that it was only a State statutory claim that was appealed and only a State statutory claim that was sent back down, when we went to the January 2005 status conference with Judge Haddon, we informed Judge Haddon and opposing counsel that we intended to move for summary judgment on that sole remaining claim. It was and we set out the grounds for it. Namely, that it wasn't that they hadn't registered the mark. It was that the mark wasn't registered at the time of the end, during which the infringements occurred, all of which had been established at trial, that there were definitive dates on which infringements occurred, and it was about a year and a half before they ever registered it. But what happened at that point was that all of a sudden, we got this expansion of the claims. And I submit that that's a very different issue. This is not a Rule 8 issue. This is an issue about what Judge Haddon saw as the claims that have been pending. And I understand that in that particular part of the transcript that you read, he may have understood at one point that there were trademark claims. I do not believe that there's any support for that in the record. And I could take you through the record. But going forward, certainly after that, there's no record in the ---- Ginsburg. But after that, the whole thing lapsed for years, right? Kedem. I'm sorry? And after that, it lapsed until there was an appeal to this Court. That's correct. There was an appeal to this Court as to which your contention, I gather, is that there was an appeal only with regard to any statutory claim? That's correct. And also, it didn't quite lapse. It did lapse, but I want to highlight something from the record, which is that there was a ---- you know, there were two trials, and there was a ---- there was a second pretrial order in which, even though the claims weren't there, once again, Polarbear identified, specifically identified, the dismissed claims. It says this Court has previously ruled on Polarbear ---- on plaintiff's other claims of trademark infringement. Open print, Montana Code, Annotated Section 30-13-301 at SEC. So although it wasn't at issue, even in the second pretrial order, it's the same language that you see throughout. It's the statutory ---- it's the statutory claim. Nothing about common law. Certainly nothing about this other mark, this ---- that emerged in the third pretrial order, this Paddle Quest ---- Paddle Quest cover photo. And there's also ---- Polarbear has tried to excuse the fact that it never pled anything for this Paddle Quest cover photo because it discovered it as the case was going on. But I also want to point, there's record support for the fact that it knew about this when it moved the Court in, I think it was 2002, and moved the Court for ---- it made a motion to amend the amended complaint, and which was ---- which was denied. But in that, the Polarbear describes everything having to do with their discovery of this Paddle Quest cover photo. There's an attached complaint. It doesn't have anything to do with trademark infringement. It only alleges copyright infringement. And it ---- and it even says in the accompanying motion, this is at SER1, Supplement X, or record of 1 at 4, Polarbear says, quote, although Polarbear believes that its claims for copyright infringement, breach of contract, and other claims, I'm ending the quote there, note that there's no reference to any trademark claim. This is before the trademark claims are dismissed. And it says ---- it goes on to say, are broad enough to cover this separate wrongful act, that is, the use of the Paddle Quest cover photo, that they're now pleading trade dress infringement for in the third ---- in the proposed third pretrial order. It's a quote. It appears prudent to amend the complaint to include these matters so that there can be no dispute that this is at issue. So even at that time, they weren't trying to amend to add any claim for a trademark infringement or a trade dress infringement based on this cover photo. And then, as Your Honor said, there's no question and Polarbear will admit this, that after or prior to the first trial, all of their trademark claims were dismissed on this statute of limitations ground. And then there was an appeal to this Court. And on the appeal, if we ---- if you look at the language that Polarbear used, it says ---- it argues that Montana's general three-year statute for torts, acting ---- actions applies where the trademark act does not provide a specific limitations period. That was its argument. And if we look at the Ninth Circuit's holding in the case, in the factual and procedural background in Polarbear 1, the Court says, Polarbear brought suit against Timex, alleging claims for copyright infringement under the Copyright 17 U.S.C. Section 101 et sec, removal of copyright management information under the Digital Millennium Copyright Act, trademark infringement under the Lanham Act, 15 U.S.C. Section 1125, Montana statutory claims for trademark infringement and unfair practices, and common law claims for breach of contract, unjust enrichment, and unfair trade practices. It's ---- Roberts. Counsel, what do you do with the latter part of that case? I'm looking at the west site, 384 Fed 3rd. On page 721, it said, Timex's argument is without merit. Timex's argument is also foreclosed by the Montana trademark statute itself, which expressly states that the statute does not affect the rights held under the common law. Right. What about that? I think that that argument is in favor of us. I mean, it expressly says within the statute that there are common law rights that are reserved. That means that you have two different claims, possible causes of action. Why was the Court mentioning that with regard to the limitations period if it didn't think there was possibly some common law cause of action to worry about? I'm sorry. Can you ---- Why would the Court have mentioned that in discussing the limitations period if it hadn't thought that there was pertinent somehow to the limitations period, i.e., that there might also be a common law cause of action that survived? What was the point of that sentence? Yeah. I'm just ---- I'm sorry. I'm confused. What is the point of the sentence in context? Can you point me exactly to where the sentence is? I'm sorry. It's on page 721 at the bottom of the first ---- before the first full paragraph at the end of the carryover paragraph. Are you looking at the 384 version? I'm looking at a Westlaw copy, and I'm not seeing page 721. It's just ---- it's two paragraphs before conclusion. Okay. Nor is there support in Timex's argument. Okay. No. Just before that. The sentence before that. Well, I believe that that supports my argument. What the Court is saying is the cause of action or trademark infringement existed at common law. Therefore, when it was codified, you go to a two-year statute of limitations. And then they're saying the face of the statute itself recognizes that the common law rights existed and that nothing is supposed to trump that. Therefore, you get the two-year statute of limitations. I believe that supports our argument. That's my understanding of what the Court means there. And certainly with regard to what's said ---- Can I just clarify one thing? My understanding is that your argument about the cover photograph and possibly the trade dress is independent of your argument about the common law versus the statutory. That's correct. In other words, you would say that even if there was a common law cause of action that survived, it couldn't survive with regard to matters that were never raised before, such as the cover picture being a trademark issue. That's correct. They never pled ---- they never pleaded a claim for anything other than the Paddlequest word mark that was registered. And then in ---- when you read the proposed three ---- third pretrial order, they include a Paddlequest logo mark that is on the front of their front ---- the front cover of their movie, and also this ---- it's an alleged mark. It's the Paddlequest cover photo. It's an unidentifiable man kayaking in, you know, in Whitewater. So that, to me, that is not a trademark. And certainly ---- Well, the second one I sort of understand. The first one seems awfully fine-cut. I mean, the notion that it ---- what is there in the pleadings that suggest that the mark wasn't contended to be, you know, both the word and also the way it was written in the logo? The Paddlequest. Paddlequest was the logo. I'm not concerned about that, Your Honor. It goes to a common-law claim. And the only reason I pointed out is they only pleaded a word ---- the word mark, the registered word mark, and that's further evidence that it wasn't a common-law claim they were seeking. They got the registration the day before they filed this complaint. We know what was going on. They wanted to get the registration so that they could file the complaint in August. Well, they did it. They did it very poorly because apparently it doesn't work. I'm sorry? Apparently it doesn't work. I mean, you can't ---- Well, no. That's not ---- I want to make sure that the Court understands that. They couldn't have known at the time. It may have been that the ---- that Timex was still infringing the mark. They couldn't have known at the time that this was going to be a failed claim, nor could Timex. It was only after trial when all the dates were laid out and it was clear that the infringement had ceased a year and a half before. Plus, there's this issue about them sitting on their rights for three years. I mean, they had a whole fight about the statute of limitations, but, you know, sometimes there are consequences to delay. And one of them was that the infringement happened to stop. And just in terms of fairness, because I see I'm coming to the end of my time, Polar Bear says, you know, it's enough that it says State trademark law, but every place in the record where it says State trademark law, there is some other reference, and namely, it's to the statute over and over. You'll see it in the amended complaint, in the verified complaint, in the second ---- in the proposed second. Well, some of the time, but not others. Sometimes yes and sometimes no. That's what they're saying. No. Well, Your Honor, when I say it, in every document. Now, I don't mean to say that when it gets to the ---- when you get to the prayer for relief, it says Montana law. But, you know, if you look at the Ninth Circuit case, it also talks about State law. But if you define it up top as meaning a State statutory trademark claim, you don't need to refer. That's not the way people write. They don't say it over and over and over. You refer to Montana State law. That's broad enough to cover a State statutory trademark claim. And, you know, there's also this issue hanging out there about what really went on. And I want to say it's not a ---- this wasn't about inartful pleading. Polar Bear knew what it was doing. It went out and it got this registration, and it sued based on the registration, and for good reason, because it's not really clear that there is such a thing as Montana common law trademark claim. They cite two cases that supposedly stand for the proposition that this exists. One is this Trusolino case, and then there's Esselstyn. Those are from 1911 and from 1936. There's not a reported decision on this in 70 years about ---- Kagan. But other States that have adopted the same trademark claim have ---- trademark ---- several of the Trademark Act have found that there's common law. Those are ---- Yes. There have been preservation, but that ---- but there's also in ---- well, two things. One is Montana is not a model ---- a model Trademark Act State. And two is that we don't know what the consequence in these other States, if there is this 1-1-108 law, like there is in Montana, saying that all statutory law is superseded ---- I'm sorry, all common law is superseded by statutory law. But my main point is that if you look at it, this isn't a technical pleading issue. What happened here was we ---- we showed the Court that we were going to win on the trademark claim, on the merits, on the existing trademark claim, that the registration had ---- they didn't obtain the registration until after ---- after all of the alleged infringements had already taken place. And only at that point did this thing mushroom. And I would submit that the standard on this is abuse of discretion. It was ---- it's a Rule 16 or Rule 15a, either way. They claim that they didn't need to amend, and they didn't move to amend. But either way, on Rule 16 or Rule 15a, it's an abuse of discretion standard. And nobody knew this record better than Judge Haddon. He lived this case for four and a half years. He had these people in his courtroom for literally weeks at a time, including the trial. He knew what was before him, and he knew what was going on when summary judgment was about to finally end this case. And his decision here is entitled to great deference. If that ---- if the panel doesn't have any more questions, I see I'm out of time. Roberts. No more questions. Thank you, counsel. We'll hear from Mr. Luke so you have some reserve time. Luke. Thank you, Your Honor. With regard to the district court hearing where the district court referred to the common law claim, I think that is important because it certainly shows that, at least in Judge Haddon's eyes, he was on notice of the potential claim. And that is significant. And on that point, there's no question that we appealed that entire summary judgment order in its entirety. It was we did not piecemeal say, oh, we are just, you know, appealing the portion of the order where he dismissed the statutory cause of action. He had granted summary judgment on all of our trademark infringement claim under state law, and that was the order that was appealed in its entirety. With regard to the trade dress claim and what is the cover photo of the Paddle Quest movie and the Paddle Quest VCR, that, I should add, is only ---- was only discovered. That infringement was discovered very late in discovery on a subpoena that was sent to Pepsi, actually. Pepsi responded. It was after the date when we were permitted to amend. We tried to amend on that point and ended up ---- But not as to the trademark claim. Pardon? But not as to the trademark claim. The specific request for amendment focused on the copyright issue, and that, I guess, at the time was the focus of the entire claim. But certainly in the ---- So how can you be better off for not having made a motion to amend? When the one that you did try to amend, you didn't get to amend, how could you be better off for not having tried to amend? Well, I guess what I would say is that we ---- it was included in the gambit of our general allegations as the case evolved. So as we discovered this new information, for example, late in discovery, we find out there's this other infringement that takes place. We're permitted to move forward, certainly on copyright law. The district judge said, even though you didn't know about this when you filed a complaint, you've got this evidence now. It's covered under your general allegations. You can proceed forward. The same should be true of our trademark claim. And, indeed, in the final ---- Were you allowed to move forward on it under the contract cause of action or not? Pardon? Were you allowed to move forward on it under the contract cause of action or not? The contract claim? No. The copyright claim. Copyright claim. Yes, we were. And that was included in the evidence that was submitted in the initial trial and the verdict that was rendered by the jury. And I would direct the Court to the initial pretrial order, which is at Supplemental 2 from Timex, page 53. Our broad allegations there say that under copyright infringement, trademark infringement, and unfair competition, Polar Bear also seeks profits made by Timex from the wrongful use of the Paddle Quest materials. And as we're referring to, a number of different things are at issue here, not just the word trademark, not just the logo, but also this we should be able to put on evidence of this cover image that was used. And, indeed, on the issue of the logo, I think that the notion that somehow we're stuck with only a word mark for our common law claim is completely without merit. My understanding was that he conceded that that isn't true. Okay. Very good. In sum, I would say that there is a common law claim. It's certainly been referred to, our State law claim for trademark infringement in numerous, numerous documents. That common law claim, and I guess on the notion, is there one in Montana, there certainly is. It's preserved by statutes. Other States with that exact phrase have found that that's exactly the purpose of this statute, is to preserve common law claims. And the fact that there's not a decision in Montana since 1933 is we don't have trademark litigation. That issue hasn't been litigated yet, right? Pardon? If we were to reverse as to whether there's a common law claim alleged, the issue of whether it's revised has not been litigated yet and hasn't really been briefed here very well. So what seems to be the issue? Whether it exists or not in Montana? Yes. It's been addressed in the briefings to the district court, and I suppose to this court, but only very tangentially, because I guess there's that challenge has never been presented. I think the challenge here is that if there was the notion that there is a claim, it should be stricken because it wasn't properly pledged. Well, the challenge has, and the alternative, been preserved. And it would appear that if we were to reverse on the other issue, we would presumably remand for a determination of that question. That would certainly be within the discretion of this court. I mean, I think it's apparent on the face of the statute itself that that's the entire purpose of the statute is to preserve common law claims. Unless there's other questions, no further questions. Thank you, counsel. The case just argued will be submitted, and the Court will adjourn. All rise. Hear ye, hear ye. All present, have you heard? The time of the judgment of the United States Court of Appeals is nine to ten. It will now be part of this court that the attorney now stands adjourned.
judges: O'scannlain, Tashima, Berzon